**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

ROBERT F. HOGAN AND ELLIOTT
HOGAN,
5405 87th Place,
Pleasant Prairie, WI 53158,

       Plaintiffs,

v.                                 Case No.: 24-cv-403

PILLOW CUBE, INC.,
560 South 100 W, Suite 18,
Provo, UT 84601,

and

REDO TECH, INC.,
459 North 300 W,
Heber City, UT 84032,

       Defendants.

## CLASS ACTION COMPLAINT

       Plaintiffs Robert F. Hogan and Elliott Hogan (the "Hogans"), for themselves and on behalf of all others similarly situated, hereby allege for their Class Action Complaint against Defendants Pillow Cube, Inc. ("Pillow Cube") and Redo Tech, Inc. ("Redo Tech") the following based on their own personal knowledge, on the investigation of their counsel, and on information and belief in order to obtain actual damages, statutory damages, declaratory relief, injunctive relief, attorneys' fees, costs, and all other relief deemed just and appropriate by the Court:

**Nature of Claim**

1.      Pillow Cube and Redo Tech have effectively stolen $2.98 from almost every consumer that has purchased a product from Pillow Cube's website, www.pillowcube.com, for an extended period of time that spans at least several months.

2.      In addition, Pillow Cube wrongly imposed an undisclosed "15% processing fee" against each and every refund it has issued to customers who decided to return a pillow purchased from Pillow Cube.

3.      While Pillow Cube advertises "free returns" on its website, its actual return policies are anything but free to consumers.

4.      Working in conjunction with Redo Tech, when a consumer visits Pillow Cube's website and clicks to purchase one of its products, software developed by Redo Tech and used by Pillow Cube automatically adds an additional item to the consumer's website shopping cart.

5.      Until quite recently, this additional item added to consumers' shopping carts bore the following straightforward description: "Try Risk Free with Free Returns or Exchanges for $2.98 via re:do." This Complaint will refer to this product as "re:do."

6.      Unless proactively removed by the consumer from the shopping cart, re:do adds $2.98 (plus the associated sales tax) to the amount that the consumer pays when checking out.

7.      The description of re:do on Pillow Cube's website is designed to mislead consumers into thinking that they are paying $2.98 up front in exchange for the security of knowing that, should the need to return products arise, they may do so without incurring any additional cost.

8.      However, when consumers wish to return their purchased products to Pillow Cube, they discover they have been duped and learn that Pillow Cube will not, in fact, fully refund their purchase price but will, rather, deduct an unjustified, legally unenforceable and hefty penalty of 15% of the purchase price from their refund.

9.      Pillow Cube charges consumers this penalty regardless of the fact that consumers have already paid separately for "Risk Free" and "Free Returns" at the point of sale.

10.     Pillow Cube failed to disclose the terms of this penalty that it assessed against the Hogans and other similarly situated consumers and instead made affirmative fraudulent misrepresents and omitted material information that Pillow Cube was obligated to disclose.

11.     For Redo Tech's part, despite the fact that it generates all its revenue from selling consumers the promise of "Risk Free" and "Free Returns" associated with purchases from e-commerce merchants like Pillow Cube, at no point does Redo Tech reimburse or compensate consumers for the 15% penalty charged by Pillow Cube or for any other costs associated with their returns.

12.     As a result, the Hogans and other similarly situated consumers have sustained concrete out-of-pocket financial losses in the sums of money that they have paid to Defendants for "re:do," the penalty fees charged by Pillow Cube, and their expenses associated with return shipping.

13.     The Hogans bring this action to represent a class of consumers in recovering the actual damages and statutory damages to which they are entitled as a result of Pillow Cube and Redo Tech's misleading and deceptive conduct.

14.     In addition, the Hogans bring this action to stop Pillow Cube and Redo Tech from further deceiving and defrauding unsuspecting members of the public by obtaining a declaration establishing that Defendants' conduct violates the Utah Consumer Sales Practices Act and an injunction ordering Pillow Cube and Redo Tech to refrain from their fraudulent and misleading business practices in the future.

**The Parties, Jurisdiction, and Venue**

15.     The Hogans are a lawfully married couple who are domiciled in Kenosha County, Wisconsin, with a residential mailing address of 5405 87th Place, Pleasant Prairie, Wisconsin 53158.

16.     The Hogans are both citizens of the State of Wisconsin for purposes of 28 U.S.C. § 1332.

17.     Pillow Cube is a corporation established under the laws of the State of Delaware, with its principal place of business located at 560 South 100 W, Suite 18, Provo, Utah 84601.

18.     Pillow Cube is a citizen of the States of Delaware and Utah for purposes of 28 U.S.C. § 1332.

19.     Pillow Cube is engaged in the business of selling bedding accessories, including pillows, mattresses, and sheets, specifically through sales channels on the Internet.

20.     Pillow Cube operates the website with the address www.pillowcube.com.

21.     Pillow Cube uses the Shopify platform to operate its website.

22.     Upon information and belief, Pillow Cube conducts a considerable volume of business in Wisconsin, selling and shipping its products directly to numerous consumers located in Wisconsin.

23.     In addition, Pillow Cube conducts a considerable volume of business in Wisconsin by selling its products indirectly through third-party retailers, such as Walmart. The screenshot below taken from the "Store Locator" function on Pillow Cube's website highlights at least three third-party retailers in Wisconsin where consumers may purchase Pillow Cube's products:

4



24.     Pillow Cube's most successful products are its pillows, which Pillow Cube advertises as having been specially designed for individuals who prefer to sleep on their sides.

25.     Redo Tech is a corporation established under the laws of the State of Delaware, with its principal place of business located at 459 North 300 W, Heber City, Utah 84032.

26.     Redo Tech is a citizen of the States of Delaware and Utah for purposes of 28 U.S.C. § 1332.

27.     Redo Tech is engaged in the business of developing software that it markets to sellers of consumer products, particularly e-commerce merchants that use the "Shopify" platform to operate their Internet websites and sell products directly to consumers.

28.     Redo Tech operates the website with the address https://www.getredo.com.

**The re:do Business Model**

29.     Redo Tech's primary product is a software "plug-in" that it offers for free to consumer-facing e-commerce merchants, who then incorporate that plug-in into their Shopify websites, which allows Redo Tech to collect revenue from subsequent consumer transactions virtually automatically.

5

30.     As seen in the screenshot below taken from the Shopify "app store," Redo Tech brands its plug-in as "Redo Free Returns & Exchanges" and is free to the e-commerce merchants that wish to install and use it:



**Automate returns. Retain revenue with incentivized store credit/exchanges. Create happy customers.**

31.     The basic premise of Redo Tech's business model is to shift the cost of product returns from sellers to consumers, with Redo Tech collecting a commission along the way for discouraging consumers from requesting refunds at all.

32.     As seen in the screenshot below taken from the frequently asked questions section of Redo Tech's website, Redo Tech markets its business to merchants as an "innovative return coverage model:"

How do you guys make money?

We monetize through our innovative return coverage model. It's a win–win: our customers enjoy peace of mind with no extra cost to you, and we make money when we reduce your returns.

33.     But Redo Tech's business model is anything but a "win-win" for consumers.

34.     Redo Tech's plug-in automatically adds its re:do product to consumers' shopping carts, inducing consumers to pay more than they otherwise would for the goods they are purchasing from e-commerce merchants.

35.     Thus, re:do is free to the e-commerce merchants to whom Redo Tech markets itself, but consumers ultimately pay for it.

36.     Nevertheless, Redo Tech actively encourages e-commerce merchants to market their return policies as "free" to consumers, as shown in the screenshot below taken from Redo Tech's website:



How will my customers respond when we offer free return coverage?

We see a positive response from Merchant's customers when launching return coverage. Customers want a risk-free shopping experience, and a commitment from the brands they shop to their satisfaction. By doing both this increases conversion rates, and builds trust to contribute to each customer lifetime value through repeat business. Many of our merchants have seen significant revenue increases after implementing redo. Embracing free return coverage strengthens your customer relationships, gets them checking out faster, and fosters loyalty.

37.     The amounts that e-commerce merchants like Pillow Cube collect from sales of re:do to consumers are transmitted by the merchants to Redo Tech at regular intervals, which provides all or substantially all of Redo Tech's revenue.

38.     As part of its offering to e-commerce merchants, Redo Tech provides a "return portal" that consumers use to effectuate their returns.

39.     Redo Tech's return portal requires consumers to jump through hoops to receive a refund of the money paid for purchased products they no longer want.

40.     Redo Tech uses a variety of techniques to steer consumers toward accepting store credit or substitute products from the merchant rather than receiving a refund of their purchase price.

7

41.     By doing this, Redo Tech hopes to minimize its own costs in paying for return shipping and to minimize merchants' costs in issuing refunds to consumers.

42.     If Redo Tech's efforts at dissuading consumers from returning products are unsuccessful, Redo Tech's return assistance simply, and solely, entails emailing the consumer a return shipping label.

43.     Again, the bottom line of Redo Tech's business model is to increase costs for consumers and minimize costs for Redo Tech and its e-commerce merchant clientele.

44.     As seen in the screenshots below taken from Redo Tech's website, Redo Tech markets itself "For merchants, by merchants" and explaining that it makes money by reducing the volume of consumer returns in e-commerce transactions:





**The Hogans' Purchases**

45. During the fall of 2023, the Hogans began shopping for new pillows for use in their home and came across Pillow Cube's website.

46. After reviewing the marketing materials published by Pillow Cube on its website and elsewhere on the Internet, on October 1, 2023, Rob Hogan decided to purchase one "Side Cube Deluxe – Standard – 5 inch" pillow from Pillow Cube.

47. When Rob Hogan added this pillow to his website shopping cart, Redo Tech's plug-in installed on Pillow Cube's Shopify-platformed website automatically added another item to his shopping cart, which it labelled "Try Risk Free with Free Returns or Exchanges for $2.98 via re:do," as shown in screenshot below taken from the email receipt sent by Pillow Cube to Rob Hogan after check out:

## Try Risk Free with Free Returns or Exchanges for $2.98 via re:do × 1

48. The order number assigned to Rob Hogan's purchase was "PC438182."

49. Rob Hogan paid a retail price of $109.00 for the pillow he purchased from Pillow Cube.

9

50.     Rob Hogan paid $2.98 for the re:do item added to his shopping cart by Redo Tech's plug-in.

51.     Rob Hogan paid for re:do with the belief and reliance on Defendants' representation that it would entitle him to "risk free" and "free returns" in the future should he be dissatisfied with his purchase.

52.     Rob Hogan paid a total of $6.16 (or 5.5% of his subtotal) in Wisconsin state sales taxes for the aforementioned items in his order, for a total order amount of $118.14.

53.     When Rob Hogan's pillow was delivered to the Hogans' residence on October 6, 2023, Elliott Hogan also decided to purchase a pillow from Pillow Cube.

54.     The Hogans followed the same procedure to acquire a pillow for Elliott Hogan from Pillow Cube, and Redo Tech's plug-in installed on Pillow Cube's Shopify-platformed website again automatically an item to their shopping cart labelled "Try Risk Free with Free Returns or Exchanges for $2.98 via re:do," as shown in screenshot below taken from the email receipt sent by Pillow Cube after the Hogans checked out:

## Try Risk Free with Free Returns or Exchanges for $2.98 via re:do × 1

55.     The order number assigned to Elliott Hogan's purchase from Pillow Cube was "PC440270."

56.     The Hogans paid a retail price of $109.00 for the pillow purchased for Elliott Hogan.

57.     The Hogans paid another $2.98 for the re:do item added to their shopping cart by Redo Tech's plug-in in connection with Elliott Hogan's purchase.

58. The Hogans again paid for re:do with the belief and reliance on Defendants' representation that it would entitle them to "risk free" and "free returns" in the future should they be dissatisfied with their purchase.

59. The Hogans again paid a total of $6.16 (or 5.5% of the subtotal) in Wisconsin state sales taxes for the aforementioned items, for a total order amount of $118.14.

<b>Pillow Cube's Deceptive Refund Policy</b>

60. Pillow Cube maintains on its website a webpage entitled "Refund policy."

61. On its website and elsewhere, Pillow Cube markets to consumers the availability of a refund for up to 60 nights after their purchase, as shown in the screenshot below, which was taken from a version of Pillow Cube's Refund policy webpage dated September 2, 2023:



**GIVE IT A CHANCE**

While most people notice an immediate benefit when using the Pillow Cube, some find that it takes a few nights of sleeping on the Pillow Cube to get used to the new size, shape, and support. If you can, **try sleeping on it for at least a week** and see if your body thanks you.

If it STILL is uncomfortable, you can *get a refund up to **60 nights*** *after purchase (**100** for the mattress).*

62. When a consumer wishes to return a pillow purchased from Pillow Cube, Pillow Cube's website directs consumers to a webpage entitled "RETURNS AND EXCHANGES," designed and operated by Redo Tech.

63. As of the date the Hogans placed their orders with Pillow Cube on October 1, 2023 and October 6, 2023, Pillow Cube's refund policy appeared as shown in the screenshots below, which have been taken from versions of the Pillow Cube's Refund policy webpage dated September 2, 2023 and October 15, 2023 that are stored on the website https://web.archive.org:

**September 2, 2023 Version**

## I JUST WANT TO RETURN

If after applying these troubleshooting tips you have determined that you still need to return or exchange your pillow, please visit our **RETURNS AND EXCHANGES PORTAL** to begin your return. Please note:

- You'll need your **order number** and **zip code/email** used to purchase
- You may request an exchange or a refund within 60 nights of your initial purchase (90 nights for the mattress)
- Returns and exchanges are only available within the 48 contiguous United States of America
- A processing fee of $15 will apply to all returns and exchanges

**October 15, 2023 Version**

## I JUST WANT TO RETURN

If after applying these troubleshooting tips you have determined that you still need to return or exchange your pillow, please visit our **RETURNS AND EXCHANGES PORTAL** to begin your return. Please note:

- You'll need your **order number** and **zip code/email** used to purchase
- You may request an exchange or a refund within 60 nights of your initial purchase (90 nights for the mattress)
- Returns and exchanges are only available within the 48 contiguous United States of America
- A processing fee of $15 will apply to all returns and exchanges

64.     This $15 "processing fee" was never identified in the Hogans' shopping cart or disclosed on any terms and conditions attached to the receipts that Pillow Cube sent to the Hogans.

65.     Moreover, nowhere in Pillow Cube's refund policy did it mention re:do or what would happen if consumers paid the $2.98 for "Risk Free" and "Free Returns."

66.     When the Hogans submitted their orders to Pillow Cube and paid an extra $2.98 plus tax up front on each transaction for re:do, they reasonably relied on Pillow Cube and Redo

12

Tech's representations that their purchases would be "Risk Free" and that they would be allowed "Free Returns" should they be unsatisfied with their purchases.

67.     Pillow Cube and Redo Tech's representation to the Hogans that their purchases would be "Risk Free" and that they were entitled to "Free Returns" were materially false and misleading given that the companies knew Pillow Cube intended to charge consumers a "processing fee" for any returns and that Redo Tech had no intention of reimbursing consumers for such costs, despite consumers' purchases of re:do.

**The Hogans' Return Experience**

68.     After sleeping on their new pillows purchased from Pillow Cube for several nights, both Rob Hogan and Elliott Hogan experienced sore necks and were dissatisfied.

69.     Both Rob Hogan and Elliott Hogan decided that they wanted to return their pillows to Pillow Cube for a full refund of their purchase price.

70.     On October 18, 2023, Rob Hogan emailed Pillow Cube's customer service desk to inquire about returning the Hogans' pillows via re:do.

71.     A customer service representative identified as "Erin" responded by directing Rob Hogan to Redo Tech's return portal and stating as follows: "Your refund will be processed, less any shipping costs that you paid at the time of your purchase, along with a return fee of 15% of your order, once we receive your return."

72.     This email communication was the first time either of the Hogans learned of Pillow Cube's intent to charge them a penalty for their returns.

73.     Nowhere at any point had Pillow Cube disclosed to the Hogans or on its publicly accessible website its intention to charge consumers a "return fee of 15%" on returned orders.

74. The next day, Rob Hogan responded to "Erin" to question why Pillow Cube intended to charge the Hogans a penalty for their returns despite their having purchased re:do, calling out Pillow Cube's and ReDo Tech's representation that re:do ensured "Free Returns."

75. "Erin" responded that afternoon, telling Rob Hogan that re:do would only cover the cost of the return shipping label and confirming Pillow Cube's intention to charge "a 15% handling fee" against the Hogans' eventual refund.

76. Rob Hogan replied to "Erin" once more to confirm the blatantly false nature of Pillow Cube's and ReDo Tech's representations at the point of purchase, writing: "To confirm then, the wording on my attached receipt isn't true of 'free returns'? Where is it stated on the 15% fee, I wouldn't have paid for ReDo if that was stated."

77. In her final message to Rob Hogan, "Erin" responded with further misrepresentations, claiming that Pillow Cube incurs "a cost associated with the return shipping of the pillow" and that was why Pillow Cube "collect[s] a 15% handling fee."

78. As explained above however, Pillow Cube incurs no costs associated with the return shipping of products by consumers; such costs are either paid by the consumers or, if the consumer paid $2.98 plus tax for re:do, then by ReDo Tech.

79. After the Hogans completed their returns, Pillow Cube did in fact assess its previously undisclosed 15% penalty against the Hogans' refund.

80. On Order PC438182, the Hogans paid a total of $115.00 for the pillow and associated sales tax, but they received a refund of only $98.65 back from Pillow Cube.

81. The same was true for Order PC440270, where—despite Pillow Cube's assurance of "Risk Free" and "Free Returns"—the Hogans paid $115.00 in purchase price and sales tax but received back a refund of only $98.65, shorting them $16.35 (or 15% of the retail price paid).

14

82.     Despite the Hogans' having each paid $2.98 for re:do based on Redo Tech's promise to provide them with "Risk Free" and "Free Returns," Redo Tech failed to compensate or reimburse the Hogans for the 15% penalty assessed by Pillow Cube.

**Pillow Cube Discretely Updates Its Refund Policy**

83.     At some point after Rob Hogan confronted "Erin" about why he and his wife were being charged 15% penalties for refunds after they paid money for "Risk Free" and "Free Returns," Pillow Cube implicitly acknowledged its material misrepresentations and omissions by updating the refund policy displayed on its website.

84.     Whereas the earlier version of Pillow Cube's refund policy active on its website when the Hogans purchased their pillows did not address re:do whatsoever and referenced a $15 "processing fee," Pillow Cube's new refund policy now appears as follows:



85.     Pillow Cube has also recently updated the FAQ page on its website, implicitly acknowledging its misrepresentations in failing to disclose its purported "15% processing fee, which can be shown by comparing the screenshots below taken from a September 2, 2023 version

15

of Pillow Cube's website, which has been stored on the website https://web.archive.org, versus the

current FAQ page on Pillow Cube's website:

**October 30, 2023 Version**

## I JUST WANT TO RETURN

If after applying these troubleshooting tips you have determined that you still need to return or exchange your pillow, please visit our **RETURNS AND EXCHANGES PORTAL** to begin your return. Please note:

- You'll need your **order number** and **zip code/email** used to purchase
- You may request an exchange or a refund within 60 nights of your initial purchase
- Returns and exchanges are only available within the 48 contiguous United States of America

**December 12, 2023 Version**

## I JUST WANT TO RETURN

If after applying these troubleshooting tips you have determined that you still need to return or exchange your pillow, please visit our **RETURNS AND EXCHANGES PORTAL** to begin your return. Please note:

- You'll need your **order number** and **zip code/email** used to purchase
- You may request an exchange or a refund within 60 nights of your initial purchase
- Returns and exchanges are only available within the 48 contiguous United States of America
- There is a $15 return shipping fee, unless Re:do was purchased at checkout for $2.98
- Additionally, there is a 15% processing fee when you select refund back to Original Payment Method. This can be avoided if you do an exchange or select store credit.

86.     As seen above, Pillow Cube now purports to charge consumers *both* a $15 "return

shipping fee"—which, upon information and belief, far exceeds Pillow Cube's actual costs—and

a "15% processing fee" for refunds.

87.     Even if a consumer purchases re:do relying on Pillow Cube and Redo Tech's

assurances of "risk free" and "free returns," like the Hogans did, Pillow Cube still charges them

this "15% processing fee" as a penalty.

16

88. In reality, Pillow Cube does no actual "processing" in connection with consumers' returns, as the pillows returned by consumers through re:do are actually shipped directly to third parties, and not back to Pillow Cube's own offices.

89. Based on the Hogans' experience, Pillow Cube has been charging consumers this "15% processing fee" since before such a fee was ever disclosed anywhere on Pillow Cube's website.

90. Based on the Hogans' experience, Redo Tech has never reimbursed or compensated consumers for the penalty fees charged by Pillow Cube, despite having sold them a product promising "Risk Free" and "Free Returns" in advance.

91. Pillow Cube has thus improperly charged consumers undisclosed amounts in breach of their contracts with consumers and in violation of state consumer protection laws.

92. Redo Tech has thus failed to provide consumers with the "free returns" that it promised them in breach of its contracts with consumers and in violation of state consumer protection laws.

93. Despite Pillow Cube discovering its clear misrepresentations concerning its refund policy in the fall of 2023, Pillow Cube has done nothing to make consumers whole and has illegally retained fees that never should have been charged to consumers.

**Class Allegations**

94. The Hogans bring this action as a "class action" within the meaning of 28 U.S.C. § 1332(d)(1)(B) and seek to represent the nationwide class and statewide subclass of consumers defined below, pursuant to Federal Rule of Civil Procedure 23.

95. Upon information and belief, the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, for purposes of 28 U.S.C. § 1332(d)(6).

96. The Hogans are citizens of a State different from both Pillow Cube and Redo Tech.

17

97.     As a result, this Court has original jurisdiction of this civil action under 28 U.S.C. § 1332(d)(2).

98.     Pursuant to Section 28 U.S.C. § 1391(b)(2), this district is a proper venue for this civil action because the Hogans are domiciled in this district and a substantial part of the events and circumstances giving rise to the Hogan's claim occurred in this district.

99.     The Hogans seek to certify the following proposed nationwide class:

Class A

All consumers in the continental United States who purchased one or more pillows from Pillow Cube, Inc. and returned it within 60 days of their date of purchase and were assessed a 15% fee.

Class B

All consumers in the continental United States who purchased one or more pillows from Pillow Cube, Inc. and purchased services from Redo, Inc., and returned their one or more pillows to PillowCube, Inc. it within 60 days of their date of purchase and were assessed a 15% fee that was not reimbursed by Redo, Inc.

Class C

All consumers in the continental United States who purchased one or more pillows from Pillow Cube, Inc. and purchased services from Redo, Inc.

100.    The Hogans also seek to certify the following proposed Wisconsin statewide subclass:

Class D

All consumers in State of Wisconsin who purchased one or more pillows from Pillow Cube, Inc. and returned it within 60 days of their date of purchase and were assessed a 15% fee.

18

Class E

All consumers in the State of Wisconsin who purchased one or more pillows from Pillow Cube, Inc. and purchased services from Redo, Inc., and returned their one or more pillows to PillowCube, Inc. it within 60 days of their date of purchase and were assessed a 15% fee that was not reimbursed by Redo, Inc.

Class F

All consumers in the State of Wisconsin who purchased one or more pillows from Pillow Cube, Inc. and purchased services from Redo, Inc.

101.     Excluded from each of the aforementioned classes are the Defendants' employees, officers, directors, agents, and legal representatives, as well as the judicial officers and court staff assigned to this case and their immediate family members.

102.     The Hogans reserve the right to modify, expand, or amend the definitions of the proposed classes at any point before the Court certifies the classes and to petition the Court to amend any certified class pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).

103.     The Hogans also reserve the right to seek the certification of classes with respect to particular issues under Federal Rule of Civil Procedure 23(c)(4), as may be appropriate as the case progresses.

104.     Certification of the Hogans' claims for class-wide treatment is appropriate because class members can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove them in separate individual actions alleging the same claims.

105.     This action satisfies the requirements of Federal Rule of Civil Procedure 23(a)(1) because, upon information and belief, there are hundreds if not thousands of consumers who have

19

returned pillows purchased from Pillow Cube and have been changed undisclosed fees by Pillow Cube, which we not reimbursed by Redo Tech, Inc.

106. Upon information and belief, the members of the proposed classes are so numerous that joinder of all members is impracticable.

107. The members of the proposed classes can be easily identified through the purchasing and returns records of the Defendants.

108. This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3) because there are questions of law and fact that are common to the claim of each member of the proposed classes and these common questions predominate over any questions affecting only individual members of the proposed classes.

109. The predominating common questions include, among other things, the following:

- When Pillow Cube implemented Redo Tech's technology and plug-ins on Pillow Cube's website?

- Whether the "Refund policy" page on Pillow Cube's website affirmatively misrepresented Pillow Cube's actual refund policy?

- Whether the "Refund policy" page on Pillow Cube's website made material omissions when describing Pillow Cube's refund policy?

- Whether the "FAQ" page on Pillow Cube's website affirmatively misrepresented Pillow Cube's actual refund policy?

- Whether the "FAQ" page on Pillow Cube's website made material omissions when describing Pillow Cube's refund policy?

- Whether the re:do items added to consumers online shopping carts by Redo Tech's technology affirmatively misrepresented the benefits offered and not offered by re:do?

- Whether the re:do items added to consumers online shopping carts by Redo Tech's technology made material omissions when describing the benefits offered and not offered by re:do?

- Whether Defendants made other material misrepresentations or omissions in their other advertisements, online websites, and other marketing materials with respect to Pillow Cube's refund policy?

20

- Whether Defendants made other material misrepresentations or omissions in their other advertisements, online websites, and other marketing materials when describing the benefits offered and not offered by re:do?

- Whether Pillow Cube engaged in unfair, unlawful, or deceptive practices by affirmatively misrepresenting the terms of its refund policy to consumers?

- Whether Pillow Cube engaged in unfair, unlawful, or deceptive practices by omitting material information from its consumer-facing descriptions of its refund policy?

- Whether Redo Tech engaged in unfair, unlawful, or deceptive practices by affirmatively misrepresenting the terms of re:do to consumers?

- Whether Redo Tech engaged in unfair, unlawful, or deceptive practices by omitting material information from its consumer-facing descriptions of re:do?

- Whether Pillow Cube engaged in unconscionable conduct in violation of the Utah Consumer Sales Practices Act?

- Whether Redo Tech engaged in unconscionable conduct in violation of the Utah Consumer Sales Practices Act?

- Whether a reasonable consumer would likely be misled by the Defendants' misrepresentations and omissions?

- Whether Pillow Cube's misrepresentations and material omissions were done knowingly by Pillow Cube?

- Whether Redo Tech's misrepresentations and material omissions were done knowingly by Redo Tech?

- Whether the Hogans and members of the proposed classes are entitled to their actual damages caused by Defendants' wrongful conduct?

- Whether the Hogans and members of the proposed class are entitled to statutory damages as a result of Defendants' wrongful conduct?

110. This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(3) because the Hogans' claims are typical of those of other class members, given that the Hogans purchased their pillows for their intended use and through the sales channel offered by Pillow Cube on its website to the public.

111. This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(4) because the Hogans will fairly and adequately represent and protect the interest of the Class Members.

112. The Hogans have no conflicts of interest that would be antagonistic to those of the other members of the proposed classes, the Hogans seek no relief that is adverse to the members of the proposed classes, and the infringement of rights and damages sustained by the Hogans is typical of those sustained by other members of the proposed classes.

113. The Hogans have retained counsel experienced in complex class action litigation and intend to prosecute this action vigorously.

114. This action satisfies the requirements of Federal Rules of Civil Procedure 23(b)(3) because class litigation is a superior method for the fair and efficient adjudication of the claims of the members of the proposed classes, as it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, without the duplication of evidence, effort, and expenses that hundreds or thousands of individual actions would require.

115. Class litigation will also permit the adjudication of relatively modest claims by members of the proposed classes, who could not afford to prosecute consumer claims against sophisticated corporations like the Defendants on an individual basis, nor would it be economically practicable even if such class members could afford to do so.

116. Class litigation is also appropriate because Defendants have acted on grounds generally applicable to the proposed classes, thereby requiring the Court's imposition of uniform injunctive relief to ensure compatible standards of conduct towards consumers amongst the public, as provided by Federal Rule of Civil Procedure 23(b)(2).

117.    Given Defendants' uniform conduct towards consumers, the uniform application of governing law, and the ascertainable identities of members of the proposed classes, this lawsuit will present no abnormal manageability issues if certified as a class action.

**Count One**
**Breach of Contract**
**(against Pillow Cube on behalf of Nationwide Classes)**

118.    The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

119.    The Hogans entered into two separate, valid, and enforceable contracts to purchase pillows from Pillow Cube, on October 1, 2023, and October 6, 2023, respectively.

120.    The other members of the proposed class also entered into separate contracts to purchase pillows from Pillow Cube.

121.    A material term of Pillow Cube's contracts with consumers was that consumers could return their purchases within 60 days "Risk Free" and that Pillow Cube would provide them with "Free Returns or Exchanges" in exchange for their purchase of re:do for $2.98 plus tax.

122.    None of Pillow Cube's contracts with consumers authorized it to charge a 15% fee of the retail purchase price and Pillow Cube never publicly disclosed its intention to charge such a fee when processing consumers' refunds.

123.    Nevertheless, when the Hogans ultimately returned their purchases, Pillow Cube breached both its contracts with them by charging the Hogans a "15% processing fee" rather than providing the Hogans with the "Risk Free" and "Free Return" that it contractually promised to provide to them.

124.    Pillow Cube similarly breached its contracts with other consumers by charging improper "processing fees" that were never disclosed and not part of the contracts.

23

125.    The Hogans and other members of the proposed class performed all their obligations under the parties' applicable contracts, including by paying the full agreed-upon purchase price and returning their pillows as instructed by Pillow Cube.

126.    As a result of Pillow Cube's breaches of contract, the Hogans and other members of the proposed classes have sustained actual, concrete, out-of-pocket financial losses in the form of monies that Pillow Cube has improperly withheld from consumers' refunds.

**Count Two**
**Breach of Contract**
**(against Redo Tech on behalf of the Nationwide Classes)**

127.    The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

128.    The Hogans entered into two separate, valid, and enforceable contracts to purchase re:do from Redo Tech, through Pillow Cube's website, on October 1, 2023, and October 6, 2023, respectively.

129.    The other members of the proposed class also entered into separate, valid, and enforceable contracts to purchase re:do from Redo Tech, through Pillow Cube's website.

130.    A material term of Redo Tech's contracts with consumers was that consumers could return their purchases from Pillow Cube within 60 days "Risk Free" and that Redo Tech would provide them with "Free Returns" in exchange for their purchase of re:do for $2.98 plus tax.

131.    Nevertheless, when the Hogans ultimately returned their purchases, Redo Tech breached both its contracts with them by failing to reimburse or compensate the Hogans for a "15% processing fee" assessed by Pillow Cube, such that Redo Tech failed to provide the Hogans with the "risk free" and "free return" that it contractually promised to provide to them.

132.     Redo Tech similarly breached its contracts with other consumers by failing to reimburse or compensate them for the "processing fees" Pillow Cube assessed in connection with processed refunds.

133.     The Hogans and other members of the proposed class performed all their obligations under the parties' applicable contracts, including by paying the full agreed-upon purchase price for re:do and returning their pillows as instructed.

134.     As a result of Redo Tech's breaches of contract, the Hogans and other members of the proposed classes have sustained actual, concrete, out-of-pocket financial losses in the form of monies that they paid when purchasing re:do and monies that Pillow Cube has improperly withheld from consumers' refunds, which Redo Tech has failed to reimburse to the Hogans and other members of the proposed classes.

**Count Three**
**Declaratory Relief for Violation of the**
**Utah Consumer Sales Practices Act**
**Utah Code § 13-11a-1 et seq.**
**(against Pillow Cube on behalf of the Nationwide Classes)**

135.     The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

136.     The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

137.     Pillow Cube is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

138.     The Hogans' purchases of pillows from Pillow Cube in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions"

25

as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct goods primarily for personal, family, or household purposes.

139.    Purchases by other similarly situated consumers who bought pillows from Pillow Cube also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

140.    Pillow Cube's advertising of "Risk Free" purchases with "Free Returns" constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

141.    Pillow Cube's imposition of an undisclosed "15% processing fee" against the Hogans and other similarly situated consumers constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

142.    By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

143.    By selling the Hogans and other consumers re:do, while intending to impose a "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

144.    By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a specific price advantaged existed when it did not, in violation of Utah Code Section 13-11-4(2)(h).

26

145.     By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

146.     By assessing the Hogans and other consumers an undisclosed "15% processing fee" after they had already purchased re:do upon Pillow Cube's representation that it would afford them "Risk Free" and "Free Returns," Pillow Cube failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

147.     By charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they would be entitled to "Free Returns," Pillow Cube charged consumers for a portion of a consumer transaction that were not previously agreed to by the consumer, in violation of Utah Code Section 13-11-4(2)(r).

148.     By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, and charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they would be entitled to "Free Returns," Pillow Cube, Pillow Cube engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

149.     As a result of Pillow Cube's aforementioned violations of the Utah Consumer Sales Practices Act, the Hogans are entitled to bring this action as a class action to obtain a declaratory judgment that Pillow Cube's acts and practices violate the statute, in accordance with Utah Code Sections 13-11-19(1)(a).

150.     The Hogans are entitled to bring this action as a class action to obtain such declaratory relief, in accordance with Utah Code Section 13-11-19(3).

151.     This action and the proposed classes described herein satisfy all requirements of Utah Code Section 13-11-20(1).

## Count Four
### Monetary Damages for Violation of the Utah Consumer Sales Practices Act
### Utah Code § 13-11-1 et seq.
### (against Pillow Cube on behalf of the Nationwide Classes)

152.     The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

153.     The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

154.     Pillow Cube is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

155.     The Hogans' purchases of pillows from Pillow Cube in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct goods primarily for personal, family, or household purposes.

156.     Purchases by other similarly situated consumers who bought pillows from Pillow Cube also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

157.     Pillow Cube's advertising of "Risk Free" purchases with "Free Returns" constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

28

158.    Pillow Cube's imposition of an undisclosed "15% processing fee" against the Hogans and other similarly situated consumers constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

159.    By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

160.    By selling the Hogans and other consumers re:do, while intending to impose a "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

161.    By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a specific price advantaged existed when it did not, in violation of Utah Code Section 13-11-4(2)(h).

162.    By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

163.    By assessing the Hogans and other consumers an undisclosed "15% processing fee" after they had already purchased re:do upon Pillow Cube's representation that it would afford them "Risk Free" and "Free Returns," Pillow Cube failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

164. By charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they would be entitled to "Free Returns," Pillow Cube charged consumers for a portion of a consumer transaction that were not previously agreed to by the consumer, in violation of Utah Code Section 13-11-4(2)(r).

165. By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, and charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they would be entitled to "Free Returns," Pillow Cube, Pillow Cube engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

166. By affirmatively representing that consumers who purchased re:do would be entitled to "Free Returns" in the future, when in fact Pillow Cube intended to charge all consumers who returned their pillows for a refund an undisclosed "15% processing fee," Pillow Cube violated Title R152-11-4(A) of the Utah Administrative Code by using the word "free" when such representation was not in fact the case.

167. Due to the losses that the Hogans and other consumers sustained as a result of Pillow Cube's aforementioned violations of the Utah Consumer Sales Practices Act, they are entitled to recover statutory damages in the amount of $2,000.00 per violation, in accordance with Utah Code Section 13-11-19(2).

168. Given Pillow Cube's violations of rules adopted by the Utah Division of Consumer Protection under Utah Code Section 13-11-7(1)(c), including but not limited to Title R152-11-4(A) of the Utah Administrative Code, the Hogans are entitled to pursue this action as a class action and recover the actual damages caused by Pillow Cube on behalf of the members of the proposed classes, in accordance with Utah Code Section 13-11-19(4)(a).

169. This action and the proposed classes described herein satisfy all requirements of Utah Code Section 13-11-20(1).

**Count Five**
**Declaratory Relief for Violation of the**
**Utah Consumer Sales Practices Act**
**Utah Code § 13-11a-1 et seq.**
**(against Redo Tech on behalf of the Nationwide Classes)**

170. The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

171. The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

172. Redo Tech is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

173. The Hogans' purchases of re:do from Redo Tech, through Pillow Cube, in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct services primarily for personal, family, or household purposes.

174. Purchases by other similarly situated consumers who bought re:do from Redo Tech, through Pillow Cube, also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

175. Redo Tech's advertising of "Risk Free" purchases with "Free Returns," when it in fact had no intention of reimbursing consumers for the "processing fees" charged by Pillow Cube or for the costs associated with their returns aside from the return shipping label, constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

31

176.     By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

177.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

178.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

179.     By failing to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds they had already purchased re:do upon the express representation that it would afford them "Risk Free" and "Free Returns," Redo Tech failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

180.     By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, Redo Tech engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

181.     As a result of Redo Tech's aforementioned violations of the Utah Consumer Sales Practices Act, the Hogans are entitled to bring this action as a class action to obtain a declaratory judgment that Redo Tech's acts and practices violate the statute, pursuant to Utah Code Sections 13-11-19(1)(b).

182.     The Hogans are entitled to bring this action as a class action to obtain such declaratory relief, in accordance with Utah Code Section 13-11-19(3).

183.     This action and the proposed classes described herein satisfy all requirements of Utah Code Section 13-11-20(1).

**Count Six**
**Monetary Damages for Violation of the Utah Consumer Sales Practices Act**
**Utah Code § 13-11-1 et seq.**
**(against Redo Tech on behalf of the Nationwide Classes)**

184.     The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

185.     The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

186.     Redo Tech is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

187.     The Hogans' purchases of re:do from Redo Tech, through Pillow Cube, in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct services primarily for personal, family, or household purposes.

188.     Purchases by other similarly situated consumers who bought re:do from Redo Tech, through Pillow Cube, also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

33

189.     Redo Tech's advertising of "Risk Free" purchases with "Free Returns," when it in fact had no intention of reimbursing consumers for the "processing fees" charged by Pillow Cube or for the costs associated with their returns aside from the return shipping label, constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

190.     By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

191.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

192.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

193.     By failing to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds they had already purchased re:do upon the express representation that it would afford them "Risk Free" and "Free Returns," Redo Tech failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

34

194.    By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, Redo Tech engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

195.    By affirmatively representing that consumers who purchased re:do would be entitled to "Free Returns" in the future, when in fact Redo Tech had no intention of reimbursing consumers who for the "processing fees" charged by Pillow Cube on refunds, Redo Tech violated Title R152-11-4(A) of the Utah Administrative Code by using the word "free" when such representation was not in fact the case.

196.    Due to the losses that the Hogans and other consumers sustained as a result of Redo Tech's aforementioned violations of the Utah Consumer Sales Practices Act, they are entitled to recover statutory damages in the amount of $2,000.00 per violation, in accordance with Utah Code Section 13-11-19(2).

197.    Given Redo Tech's violations of rules adopted by the Utah Division of Consumer Protection under Utah Code Section 13-11-7(1)(c), including but not limited to Title R152-11-4(A) of the Utah Administrative Code, the Hogans are entitled to pursue this action as a class action and recover the actual damages caused by Pillow Cube on behalf of the members of the proposed classes, in accordance with Utah Code Section 13-11-19(4)(a).

198.    This action and the proposed classes described herein satisfy all requirements of Utah Code Section 13-11-20(1).

**Count Seven**
**Injunctive Relief for Violation of the Utah Consumer Sales Practices Act**
**Utah Code § 13-11-1 et seq.**
**(against Pillow Cube on behalf of the Nationwide Class)**

199.    The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

200.    The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

201.    Pillow Cube is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

202.    The Hogans' purchases of pillows from Pillow Cube in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct goods primarily for personal, family, or household purposes.

203.    Purchases by other similarly situated consumers who bought pillows from Pillow Cube also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

204.    Pillow Cube's advertising of "Risk Free" purchases with "Free Returns" constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

205.    Pillow Cube's imposition of an undisclosed "15% processing fee" against the Hogans and other similarly situated consumers constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

206.    By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

36

207. By selling the Hogans and other consumers re:do, while intending to impose a "15% processing fee" on all returns for refunds, Pillow Cube indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

208. By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a specific price advantaged existed when it did not, in violation of Utah Code Section 13-11-4(2)(h).

209. By selling the Hogans and other consumers re:do, while intending to impose an undisclosed "15% processing fee" on all returns for refunds, Pillow Cube indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

210. By assessing the Hogans and other consumers an undisclosed "15% processing fee" after they had already purchased re:do upon Pillow Cube's representation that it would afford them "Risk Free" and "Free Returns," Pillow Cube failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

211. By charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they would be entitled to "Free Returns," Pillow Cube charged consumers for a portion of a consumer transaction that were not previously agreed to by the consumer, in violation of Utah Code Section 13-11-4(2)(r).

212. By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, and charging the Hogans and other consumers for an undisclosed "15% processing fee" after representing that their purchases would be "Risk Free" and they

37

would be entitled to "Free Returns," Pillow Cube, Pillow Cube engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

213.    As a result of Pillow Cube's aforementioned violations of the Utah Consumer Sales Practices Act, the Hogans are entitled to obtain an injunction from the Court enjoining Pillow Cube from engaging in the aforementioned conduct and from committing any and all further violations of the Utah Consumer Sales Practices Act, in accordance with Utah Code Section 13-11-19(1)(b).

214.    The Hogans are entitled to bring this action as a class action to obtain such injunctive relief, in accordance with Utah Code Section 13-11-19(3).

**Count Eight**
**Injunctive Relief for Violation of the Utah Consumer Sales Practices Act**
**Utah Code § 13-11-1 et seq.**
**(against Redo Tech on behalf of the Nationwide Classes)**

215.    The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

216.    The Hogans are "persons" as defined in Utah Code Section 13-11-3(5) because they are both individuals, as are other similarly situated consumers who are members of the proposed classes.

217.    Redo Tech is a "supplier" as defined in Utah Code Section 13-11-3(6) because it is a seller who regularly solicits and engages in consumer transactions.

218.    The Hogans' purchases of re:do from Redo Tech, through Pillow Cube, in two separate transactions on October 1, 2023, and October 6, 2023, respectively, constituted two "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a), as the Hogans purchased two distinct services primarily for personal, family, or household purposes.

219.     Purchases by other similarly situated consumers who bought re:do from Redo Tech, through Pillow Cube, also constituted "consumer transactions" as defined in Utah Code Section 13-11-3(2)(a).

220.     Redo Tech's advertising of "Risk Free" purchases with "Free Returns," when it in fact had no intention of reimbursing consumers for the "processing fees" charged by Pillow Cube or for the costs associated with their returns aside from the return shipping label, constituted a deceptive act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-4(1).

221.     By promising the Hogans and other consumers that their purchases would be "Risk Free" and that they would be entitled to "Free Returns," while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had characteristics, uses, or benefits that it did not have, in violation of Utah Code Section 13-11-4(2)(a).

222.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that the subject of a consumer transaction had been supplied in accordance with a previous representation when it had not been so supplied, in violation of Utah Code Section 13-11-4(2)(e).

223.     By selling the Hogans and other consumers re:do, while not intending to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds, Redo Tech indicated that a consumer transaction involved a particular warranty term and other rights, remedies, and obligations when such representation was false, in violation of Utah Code Section 13-11-4(2)(j)(i).

224.     By failing to reimburse consumers for the "processing fees" charged by Pillow Cube on all returns for refunds they had already purchased re:do upon the express representation that it would afford them "Risk Free" and "Free Returns," Redo Tech failed to honor a warranty and a particular warranty term in violation of Utah Code Section 13-11-4(2)(j)(ii).

225.     By misrepresenting the characteristics of re:do, omitting material information from its description of re:do, Redo Tech engaged in an unconscionable act or practice by a supplier in connection with a consumer transaction, in violation of Utah Code Section 13-11-5(1).

226.     As a result of Pillow Cube's aforementioned violations of the Utah Consumer Sales Practices Act, the Hogans are entitled to obtain an injunction from the Court enjoining Redo Tech from engaging in the aforementioned conduct and from committing any and all further violations of the Utah Consumer Sales Practices Act, in accordance with Utah Code Section 13-11-19(1)(b).

227.     The Hogans are entitled to bring this action as a class action to obtain such injunctive relief, in accordance with Utah Code Section 13-11-19(3).

**Count Nine**
**Violation of the Wisconsin Consumer Act**
**Wisconsin Stat. § 100.18**
**(Plead in the Alternative against Pillow Cube on behalf of the Wisconsin State Classes)**

228.     The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

229.     Pillow Cube made, published, or placed before one or more members of the public, including the Hogans, an advertisement, announcement, statement, or representation concerning the sale of its pillows, including but not limited to Pillow Cube's representation that consumers' purchases would be "Risk Free" and consumers would be entitled to "Free Returns."

40

230. Pillow Cube's aforementioned representations were untrue, deceptive, or misleading at the time they were made by Pillow Cube, in violation of Section 100.18(1) of the Wisconsin Statutes.

231. The Hogans and other consumers sustained pecuniary loss as a result of Pillow Cube's untrue, deceptive, or misleading statements, including in the form of undisclosed "15% processing fees" assessed by Pillow Cube against the refunds for returned pillows.

232. The Hogans are entitled to judgment against Pillow Cube in an amount to determined at trial and to recover their reasonable attorneys' fees, in accordance with Section 100.18(11)(b)(2) of the Wisconsin Statutes.

**Count Ten**
**Violation of the Wisconsin Consumer Act**
**Wisconsin Stat. § 100.18**
**(Plead in the Alternative against Redo Tech on behalf of the Wisconsin State Classes)**

233. The Hogans incorporate by reference their allegations in the foregoing paragraphs as if fully set forth in this paragraph.

234. Redo Tech made, published, or placed before one or more members of the public, including the Hogans, an advertisement, announcement, statement, or representation concerning the sale of its re:do product, including but not limited to Redo Tech's representation that consumers' purchases of re:do would entitle them to "Risk Free" and "Free Returns" of products purchased from Pillow Cube.

235. Redo Tech's aforementioned representations were untrue, deceptive, or misleading at the time they were made by Pillow Cube, in violation of Section 100.18(1) of the Wisconsin Statutes.

236. The Hogans and other consumers sustained pecuniary loss as a result of Redo Tech's untrue, deceptive, or misleading statements, including in the form of the amounts

Case 2:24-cv-00403-NJ   Filed 04/03/24   Page 41 of 44   Document 1

consumers paid for the re:do products automatically added to their online shopping carts by Defendants.

237.    The Hogans are entitled to judgment against Redo Tech in an amount to determined at trial and to recover their reasonable attorneys' fees, in accordance with Section 100.18(11)(b)(2) of the Wisconsin Statutes.

**WHEREFORE**, based on the foregoing allegations, the Hogans demand that a judgment be entered in their favor and against Pillow Cubs and Redo Tech awarding the following relief:

A.      Enter an order certifying this action as a class action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Utah Code Section 13-11-20(3), designating the Hogans as representatives of the Nationwide Class and the Wisconsin subclass, and the Hogans' chosen counsel as counsel for the classes;

B.      Issue a declaratory judgment establishing that the conduct described herein by Pillow Cube and Redo Tech constitutes a violation of the Utah Consumer Sales Practices Act, in accordance with Utah Code Section 13-11-19(1)(a);

C.      Issue an order enjoining Pillow Cube and Redo Tech from engaging in further violations of the Utah Consumer Sales Practices Act, in accordance with Utah Code Section 13-11-19(1)(b);

D.      Award the Hogans and class members their actual or statutory damages, plus interest, in an amount exceeding five million United States dollars, in accordance with Utah Code Section 13-11-19(2) & (4)(a);

E.      Award the Hogans and class members their reasonable attorneys' fees, in accordance with Utah Code Section 13-11-19(5)(a);

F.     Award the Hogans and class members all costs, disbursements, and expenses provided by law; and

G.     Award the Hogans and class members any such further or different relief as the Court may determine to be just and proper.

## JURY DEMAND

The Hogans hereby demand a jury to resolve all claims and issues that are triable to a jury, in accordance with Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: April 3, 2024.

s/ Nathan E. DeLadurantey_____
Nathan E. DeLadurantey, 1063937
DELADURANTEY LAW OFFICE, LLC
136 E. Saint Paul Ave.
Waukesha, WI 53189
(414) 377-0515
E: nathan@dela-law.com

Luke Hudock, 1086264
HUDOCK LAW GROUP, LLC
P.O. Box 83
Muskego, WI 53150
(414)526-4906
E: lphudock@law-hlg.com

*Attorneys for the Plaintiffs*

43

44